In the United States District Court
For the District of Kansas

| | |
|---|---|
| Woodrow T. Newell,<br><br>    Plaintiff,<br><br>        vs.<br><br>Tyson Foods, Inc., & Foodbrands Supply Chain Services, Inc.,<br><br>    Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

COMPLAINT

1. This case concerns religious discrimination by Tyson Foods, Inc. and its subsidiary Foodbrands Supply Chain Services, Inc., against its employee, Woodrow Newell.

2. Plaintiff Newell was employed as a refrigeration maintenance mechanic at Tyson's Olathe, Kansas, Distribution Facility.

3. Around August 3, 2021, Defendant Tyson announced that its employees would be required to become fully vaccinated against COVID-19 by November 1, 2021.

4. Plaintiff requested a religious accommodation, by which he could wear a mask and submit to COVID tests, as he was already doing.

5. Tyson declined his request for accommodation.

6. Instead, Tyson offered its own "accommodation," consisting of "unpaid leave" for one year.

7. The "accommodation" was no accommodation at all; if Newell refused Tyson's "offer," he would be terminated on November 1, 2021.

8. Tyson failed to make a good-faith effort to provide a reasonable religious accommodation to Plaintiff and failed to provide Plaintiff a religious accommodation, which constitutes religious discrimination prohibited by Title VII.

1

FACTS COMMON TO ALL COUNTS

JURISDICTION & VENUE

9. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1339.

10. This action is brought to remedy religious discrimination. This action is authorized and instituted under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-G), 2000e-2 and 2000e-3(a).

11. Venue is proper here under 42 U.S.C. § 2000e-5(t)(3).

12. This Court has authority to award the requested damages, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-G), 2000e-2 and 2000e-3(a).

13. Plaintiff timely filed a complaint with the EEOC and received a Final Decision and Notice of Right to Sue, dated May 22, 2024

14. Plaintiff timely files this action within 90 days of receipt of the notice.

15. Plaintiff has exhausted his administrative remedies, and timely filed this action.

PARTIES

16. Plaintiff Woodrow T. Newell, also known as Tom Newell, is a resident of Kansas.

17. Defendant Tyson Foods, Inc., is a Delaware Corporation with its principal place of business at 2200 Don Tyson Parkway, Springdale, Arkansas.

18. Defendant Tyson Foods, Inc., despite maintaining substantial operations in Kansas is not registered to do business in Kansas with the Secretary of State.

19. Defendant Foodbrands Supply Chain Services, Inc., is a Delaware Corporation with its principal place of business at 2200 Don Tyson Parkway in Springdale, Arkansas.

20. Defendant Foodbrands Supply Chain Services, Inc., is registered to do business in Kansas, with a registered office of 4601 E. Douglas Avenue #700, Wichita, Kansas.

21. In this matter, Defendant Foodbrands Supply Chain Services, Inc., operates as the subsidiary and agent of Defendant Tyson Foods, Inc.

22. Under the definitions of 42 U.S.C. 2000e, Plaintiff is a statutory "employee" of Tyson Foods, Inc., and its agent Foodbrands Supply Chain Services, Inc., and they are both included in the definition of "employer" of Plaintiff for purposes of Title VII of the Civil Rights Act of 1964.

23. Upon information and belief, Foodbrands Supply Chain Services, Inc.'s actions were directed by Tyson Foods, Inc., in all relevant ways.

24. Therefore, when the Complaint refers to "Defendant Tyson," it refers to both Tyson Foods, Inc., and Foodbrands Suply Chain Services, Inc.

25. All actions by Defendant Tyson were within the scope of its authority as employer, and Defendant Tyson is liable for the actions of its employees and agents.

### Plaintiff's Sincerely Held Religious Beliefs

26. Plaintiff Newell is a Christian, and is a member of a congregation of the Church of God (Holiness).

27. Plaintiff Newell came to the sincere, religiously-motivated conclusion that it would be wrong and sinful for him to take any of the COVID-19 vaccines offered to the public.

28. Plaintiff believes the Holy Bible is God's revelation to humanity, and that it reveals the principles by which God judges us.

29. Plaintiff believes that the Bible teaches that mankind is a special creation of God, made in the image of God. [Genesis 1:26-30]. Further, God created men and women in His own image, and Christ died for men and women, so every person possesses full dignity and warrants respect, love and protection from the moment of conception.

30. Plaintiff believes that the Scriptures also reveal that God is at work in humanity even before we are conceived. *See* Jeremiah 1:4 – 5 ("The word of the Lord came to me, saying, 'Before I formed you in the womb I knew you, before you were born I set you

apart; I appointed you as a prophet to the nations.'"). And the image of God is given to humanity from conception, in the womb. *See* Psalm 139:13 – 16 ("For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be.").

31. Prior to his request for accommodation, Plaintiff became aware that fetal stem cells were used in the development and/or testing of commercially available COVID-19 vaccines, and that such cells were obtained as a result of some form of abortion.

32. Fetal stem cell lines have been used in the development of the Johnson & Johnson COVID-19 vaccine, and fetal stem cell lines have been used in some of the testing of the Moderna and Pfizer COVID-19 vaccines. *See* https://lozierinstitute.org/pro-life-scientists-facts-you-should-know-about-fda-approved-pfizer-vaccine/.

33. Plaintiff believes the intentional killing of any human life, including through procuring an abortion, is wrong.

34. Further, Plaintiff believes it to be improper to seek to gain or profit from the byproducts of a sinful, intentional killing.

35. While the cells used along with the vaccines are "descendants" of the original cells, Plaintiff's religious belief holds that the use of *any* cells that originate from improperly procured tissue implicates the principles of the Bible's teachings on life, and causes a beneficiary of such use to be morally complicit in the original wrong of abortion.

36. Plaintiff Newell decided it would be sinful for him to benefit or profit from any vaccine that was procured or aided by the death of an innocent human life.

37. Mr. Newell's religious beliefs with regard to this matter were sincere.

4

**Mr. Newell's beliefs conflict with Tyson's Policy.**

38. Plaintiff's religious beliefs conflicted with Tyson's policy on COVID-19 vaccines.

39. In August 2021, Tyson adopted a policy that all employees must be vaccinated by November 1, 2021.

40. From March 11, 2015, to November 1, 2021, Plaintiff Newell was employed in Tyson's Olathe Distribution Center.

41. At the time the policy was announced, Plaintiff Newell was performing his job in a satisfactory manner and meeting his Employer's legitimate expectations.

42. In order to curb the risk of COVID-19 spread, he wore a mask and submitting to company-requested testing.

43. Plaintiff Newell's job duties included work inside the plant, and outside the plant, working on refrigeration equipment.

44. During his normally assigned duties, Mr. Newell often works alone, or at a distance from other workers.

45. As a result of Tyson's new policy, Mr. Newell informed the company of his beliefs, and he filed a formal, written request to Tyson for an accommodation of his religious beliefs.

46. Mr. Newell provided Defendant Tyson's Human Resources with his accommodation request on or about August 24, 2021.

47. Mr. Newell's request stated he is Christian and that his opposition to taking a COVID-19 vaccine related to his opposition to abortion.

**Tyson claims Newell was insincere, and put Newell on unpaid leave for more than one year, rejecting his requested accommodation**

48. Tyson rejected Plaintiff's request, and falsely claimed that Mr. Newell could not demonstrate any sincerely held religious belief that would prevent him from taking the COVID-19 vaccine.

49. Rather, Tyson pointed to statements by the National Council of Churches (which is not Mr. Newell's denomination), and concluded that *all* Christians lacked any sincere basis for requesting religious accommodation.

50. In deciding that no Christian, including Tyson, had a sincere basis for refusing the vaccine, Tyson engaged in religious discrimination among groups of Christians.

51. Tyson instead told Newell that if he refused to take the vaccine, his only option was to take a one-year unpaid leave of absence, which Tyson called "LOA Plus."

52. Thus, if he did not take unpaid leave for a year, he would be fired on the spot.

53. Newell was told that his job would not be protected by LOA Plus; if after one year, Newell failed to obtain a vaccine, he would not be eligible to be rehired.

54. "LOA Plus" was a constructive discharge and an adverse employment action.

55. Under LOA Plus:

    a. Newell would not be paid for the year.

    b. The leave would not end so long as Newell remained unvaccinated.

    c. During the leave, Newell would not receive all of the benefits available to employees.

    d. Newell's loans from the Tyson 401k program would not be put on hold, and would come due.

    e. Newell would not be allowed to put money into Tyson's retirement programs.

    f. Newell would not receive 401(k) matches or Employee Stock matching grants.

    g. Newell would not receive annual performance bonuses.

    h. If Newell accepted a job at Tyson again, he would have to work another year to earn certain vacation and time off benefits.

    i. Newell's job could be relisted, and he was not guaranteed his old job on return.

    j. Newell's Tyson life insurance coverage would be cancelled, without proper notice.

56. As a result of being forced to stop working, Plaintiff sought other employment.

57. LOA PLUS was not a reasonable accommodation, but a punitive measure amounting to religious discrimination.

58. At no time did Tyson offer Plaintiff a true, reasonable accommodation, or consider offering a reasonable accommodation.

59. Tyson offered an unreasonable and unreasoned response; Tyson refused to analyze Mr. Newell's request, because it adopted the position that no such claim could be sincere.

60. Further, Tyson refused to consider whether any of Mr. Newell's particular job functions might be performed safely, in whole or in part, given that many of his job duties were performed outside, or at a safe distance from others.

61. Thus, the LOA Plus program was not an accommodation; it was a retaliatory punishment for those who made religious accommodation requests.

62. Tyson impermissibly pressured Newell to "choose between following the precepts of [his] religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of [his] religion in order to accept work." *Sambrano v. United Airlines, Inc., 19 4th 839. 841* (5th Cir. 2021) (*quoting Sherbert v. Verner*, 374 U.S. 398, 404 (1963)) (Ho, J., dissenting from denial of injunction pending appeal).

63. Fulfilling Plaintiff's request for accommodation would not have presented a substantial burden in the overall context of Tyson's business.

64. Upon information and belief, Tyson did offer other, non-religious employees accommodations that allowed them to continue employment, but did not offer them to Mr. Newell because of his religious objection.

65. Further, before the expiration of the year, Tyson ceased imposing the vaccine policy; this operated as religious discrimination between certain groups of Christians, because Christians with Mr. Newell's beliefs had been terminated, screened out, or excluded for a year, under the LOA Plus program.

66. Tyson did not offer Mr. Newell notice of eligibility to return before the year of the LOA Plus period ended.

67. Tyson's policy conflicted with Kansas Law, on and after November 23, 2021, which required employers to offer exemptions to employees if certain job duties violated their sincerely held religious beliefs, as shown by a written statement of the employee; Kansas law further prohibited any inquiry into the sincerity of the request.  *See* KSA 44-663 (2021).

68. Consistent with Tyson's demands, Mr. Newell went on "unpaid leave" on November 1, 2021.

69. Under Mr. Newell's 401(k) Plan at Tyson, he had taken out a small loan to pay family medical bills; the repayment was to be taken out of Mr. Newell's pay.  But rather than defer repayment during the leave period, Tyson considered the loan in "default," and later informed Mr. Newell that the loan had gone into default. Mr. Newell had to repay the loan immediately.

70. Further, under Tyson's retirement plan, Mr. Newell forfeited his expected 401(k) match, and on ability to participate in the Tyson Stock Purchase program.

71. In prior years, Mr. Newell had contributed so as to earn all his match, and he intended to do so at the time he was forced out of his job.

72. In taking these actions, Tyson harmed Mr. Newell.

73. On or about November 28, 2022, Mr. Newell accepted a position at the Tyson facility, but found that he was treated as a new employee for purposes of many employee benefits.

COUNT I
Religious Discrimination in Violation of Title VII
(42 U.S.C. §2000)

74. Plaintiff incorporates by reference all preceding paragraphs.

75. Plaintiff is a Christian.

76. Plaintiff expressed to Tyson, during discussions about this issue, that he is a Christian.

77. Plaintiff submitted a written request for exemption to Tyson, informing Tyson that Newell's request was religiously motivated.

78. Plaintiff's religion was a substantial motivating factor in Tyson's decision to refuse Plaintiff's request for accommodation.

79. This is further confirmed in that, upon information and belief, Tyson offered other, non-religious employees medical accommodations, but withhold those accommodations from Newell.

80. Defendant Tyson's forced "leave" program was an adverse employment action, which prevented Plaintiff from continuing to work with Tyson after November 1, 2021.

81. As a proximate result of Defendant Tyson's religious discrimination, Plaintiff has been harmed by the loss of wages, salary, benefits, in an amount to be determined at trial.

82. In addition, because of Defendant's discriminatory actions, Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, and self doubt.

## COUNT II
### Failure to Accommodate in Violation of Title VII
(42 U.S.C. §2000)

83. Plaintiff incorporates paragraphs 1-57 as if set forth fully at this point.

84. Plaintiff has a sincerely held religious belief preventing him from accepting the COVID-19 vaccines.

85. Plaintiff informed Tyson of this belief, and requested religious accommodation of this belief.

86. Plaintiff denied this request, and forced Plaintiff to go on unpaid leave or else be terminated; effectively, this was a denial of Plaintiff's request.

87. Tyson failed to make a good-faith effort to provide a reasonable religious accommodation to Plaintiff and failed to provide Plaintiff a religious accommodation.

88. Rather than complying with its legal obligation to accommodate Plaintiff, Defendant forced Plaintiff to take unpaid "leave."

89. Defendant Tyson's forced "leave" program was an adverse employment action, which prevented Plaintiff from continuing to work with Tyson after November 1, 2021.

90. As a proximate result of Defendant Tyson's religious discrimination, Plaintiff has been harmed by the loss of wages, salary, benefits, in an amount to be determined at trial.

91. In addition, because of Defendant's discriminatory actions, Plaintiff has suffered humiliation, mental anguish, emotional and physical distress, and self doubt.

COUNT III
Retaliation in Violation of Title VII
(42 U.S.C. §2000)

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Plaintiff engaged in activity protected by Title VII—in his request for accommodation and the exercise of his religious beliefs and practices.

94. Defendants took an adverse employment action against Plaintiff, both in altering the terms of his employment (requiring him to take unpaid leave), and in imposing the other requirements of the LOA Plus mentioned above.

95. Moreover, when Plaintiff returned to Tyson, he was subjected to further economic losses because he had requested an accommodation but was put on leave.

96. Despite supposedly being on "leave," when Plaintiff returned to work, his "leave" was not treated as continuous employment, and so Plaintiff was subjected to additional harms, such as losing the ability to immediately accrue earned time off and/or vacation time.

97. Mr. Newell also faced a demand to repay a 401(k) loan, after Tyson had failed to inform Mr. Newell to make payments after his paycheck was stopped.

98. These additional harms were imposed as a result of Plaintiff's request for religious accommodation, and Defendants' decision to put Plaintiff on leave as a result of his request.

99. Plaintiff was harmed by the retaliation, in violation of Title VII.

## Prayer for Relief

100. Plaintiff seeks a declaratory judgment in his favor and against all Defendants on all Counts, as follows:

    a. A declaratory judgment that Defendants' policies and practices violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*.

    b. A permanent injunction enjoining Defendants, their agents and employees and all persons acting in active concert or participation with them, from engaging in religious discrimination and retaliation and any other employment practice which discriminates on the basis of religion.

    c. An Order requiring Defendants to institute and carry out policies, practices, and programs which provide Equal Employment Opportunities for religiously-based vaccine accommodation requests, and which eradicate the effects of its past and present unlawful employment practices.

    d. An Order requiring Defendants' managers and agents to undergo training in religious discrimination and reasonable accommodation.

e. A preliminary and permanent injunction requiring Defendants, their agents, officials, employees, and any other person acting on their behalf to purge (or correct, as law may require) Mr. Newell's personnel file of any negative reference related to the recommended discharge or actual discharge, and causing it to reflect any performance rating Mr. Newell was entitled to in place of the discrimination;

101. Plaintiff further seeks an award in his favor including:

a. Back pay;

b. Front pay;

c. Compensatory damages;

d. Pay for lost vacation days;

e. Retirement contributions and/or matching funds and sums which Mr. Newell's account would have earned during the relevant period;

f. Pay for leave required to be used because of Defendant's actions;

g. Lost training;

h. Applicable interest;

i. Any tax consequences of a lump-sum payment;

j. Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements reasonable out-of-pocket expenses, expert fees, witness fees;

k. Compensation for past and future non-pecuniary losses resulting from the unlawful conduct, including, but not limited to, pain and suffering, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and humiliation; and

l. All other further relief to which Plaintiff may be entitled.

102. Plaintiff further seeks an Order for such other relief as the Court deems just and equitable in these premises.

Jury Demand

Plaintiff requests a trial by jury on all issues so triable.

    Respectfully submitted,
    Law Offices of Jonathan R. Whitehead, LLC
    /s/ Jonathan R. Whitehead
    Jonathan R. Whitehead, Mo. 56848
    229 S.E. Douglas St., Ste. 210
    Lee's Summit, Mo 64063
    816.398.8305 - Phone
    816.278.9131 – Fax
    Jon@WhiteheadLawLLC.com

    And

    Whitehead Law Firm, LLC
    /s/ Michael. Whitehead
    Michael K. Whitehead, Mo. 27997, KS Fed 78378
    229 S.E. Douglas St., Ste. 210
    Lee's Summit, Mo 64063
    816.398.8967 - Phone
    816.210-4449 – Cell
    Mike@TheWhiteheadFirm.com

    Attorneys for Plaintiff Newell